**Glenn F. YOUNGER, Plaintiff-Appellee,**

v.

**The COLORADO STATE BOARD OF LAW EXAMINERS, the Supreme Court of the State of Colorado, Honorable William H. Erickson, Honorable Luis D. Rovira, Honorable Paul V. Hodges, Honorable Robert B. Lee, Honorable Jean E. Dubofsky, Honorable George E. Lohr, Individually and as Justices of the Supreme Court of the State of Colorado, Defendants-Appellants.**

No. 80–1220.

United States Court of Appeals, Tenth Circuit.

Argued June 4, 1980.

Decided July 10, 1980.

Rehearing and Rehearing En Banc Denied Sept. 3, 1980.*

* Judge McWilliams did not participate.

Mary J. Mullarkey, Sol. Gen., Denver, Colo. (J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., and Howard Kenison, Asst. Atty. Gen., Denver, Colo., were on brief), for defendants-appellants.

Gina B. Weitzenkorn and Wiley Y. Daniel, Denver, Colo. (Frederick Charleston and Glenn F. Younger, Denver, Colo., *pro se*, were on brief), for plaintiff-appellee.

Before HOLLOWAY, BREITENSTEIN and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellee Glenn F. Younger brought this action in the district court pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201 and the Fourteenth Amendment against defendants-appellants the Colorado State Board of Law Examiners, the Colorado Supreme Court and the individual Justices of the Colorado Supreme Court. Jurisdiction is claimed under 28 U.S.C. §§ 1331 and 1343(3). Plaintiff alleged he was denied due process and equal protection by the defendants' adoption and enforcement of Rule 214, Colo.R.Civ.P., under which he has been denied an opportunity to sit again for the Colorado bar examination after three earlier unsuccessful examinations.

Rule 214, which governs reexamination for individuals who have failed the Colorado bar examination, states (I R. 20):

Any applicant in Class C who fails on examination to obtain a passing grade

may take the next succeeding examination. If he then fails he will be reexamined only by special permission of the Court en banc and for good cause shown.[1]

The district court concluded that the final preclusion of any opportunity for reexamination under Rule 214, regardless of requirements for additional study, training or development, was a violation of the Fourteenth Amendment to the United States Constitution. The court entered a declaratory judgment to this effect and enjoined the defendants from applying Rule 214 so as to deny plaintiff the opportunity to sit again for the Colorado bar examination. *Younger v. Colorado State Board of Law Examiners*, 482 F.Supp. 1244 (D.Colo.). The defendants appeal from that judgment.

Defendants sought a stay of the judgment from the district court, pending final resolution of this appeal. The district court refused to grant a stay. I R. 86. Appellants then filed in this court a motion to stay enforcement of the judgment. We granted that motion on March 10, 1980, and accelerated this appeal.

I

*The factual background*

Plaintiff Younger is a 1976 graduate of the University of Colorado School of Law. In June 1976 he obtained employment as a law clerk with the Legal Aid Society of Metropolitan Denver and was to be promoted to an attorney position after passing the Colorado bar examination. III R. 35–36. After meeting the necessary moral and academic prerequisites, Mr. Younger took the July 1976 Colorado bar examination and failed. He subsequently took and failed the February 1977 examination.

Mr. Younger passed the bar examination in the State of West Virginia since last taking the examination in Colorado. Under Rule 46(a), FRAP, Mr. Younger has been admitted to the bar of this court. Under Colorado Rule 202 he still remains in Class C, however, and this appeal is not affected by his passing the West Virginia examination or the admissions to practice which he has achieved.

---

1. Applicants for admission to the Colorado Bar are classified into three categories: Classes A, B, and C. Applicants in Classes A and B are eligible for admission on waiver if they meet certain requirements, including admission to practice in another state, practice in that state for a requisite period of time, and no prior failure of the Colorado bar examination. All other applicants are placed in Class C and must take and pass a written Colorado bar examination.

Pursuant to Rule 214 he then petitioned the Colorado Supreme Court and received permission to take the bar examination a third time in July 1977. After an illness prevented him from completing that examination, Mr. Younger took the February 1978 examination as a third-time examinee. He failed to pass.

Mr. Younger petitioned the Colorado Supreme Court pursuant to Rule 214 to take the bar examination a fourth time in July 1978. This petition was denied, as were subsequent petitions to take the February and July 1979 examinations.

After denial of Younger's last petition to take the Colorado bar examination, this action was brought for a determination that Rule 214 is unconstitutional, for an injunction prohibiting defendants' continuing the enforcement of the Rule, and for damages. Defendants moved to dismiss for lack of jurisdiction and for failure to state a claim. After oral arguments the district court denied the motion.

A hearing was then held on plaintiff's motion for a preliminary injunction. The two main witnesses at this hearing were Mr. Younger and the late Justice James K. Groves, Chairman of the Admissions Committee of the Colorado Supreme Court. An affidavit was submitted by the other member of the Admissions Committee, Justice William H. Erickson.

Justice Groves indicated that Colorado follows current educational standards in its bar examination policy. At least 31 other states limit the number of times an applicant may take a bar examination in the same or similar manner as does Colorado. Only ten states have no limit on reexamination. III R. 17.

Justice Groves also testified that petitions requesting permission to take the Colorado bar examination a third time are always granted. III R. 10. However, petitions requesting permission to take the examination a fourth time are not routinely granted. The Colorado Supreme Court generally imposes a waiting requirement of two or three years after a third failure. The reason for the waiting period is to allow the

individual to mature and possibly engage in some kind of law-related work. III R. 12. The Admissions Committee will then review an application to take the examination a fourth time, focusing on the prior examination scores, what the individual has been doing in the interim, and any other relevant factors an individual may present or which the Admissions Committee may discover. III R. 11.

If the results of the review of the Admissions Committee so justify, a recommendation is made to the full Colorado Supreme Court that an independent evaluation of the applicant be made to determine whether the person should be permitted to take the examination a fourth time. The Court accepts this recommendation from the Admissions Committee and the individual is then sent to confer with a local law professor.

The professor reviews the individual's prior bar examinations, confers personally with the individual, and reviews any other relevant material. If the professor recommends that permission be granted to take the examination a fourth time, it is always on the condition that certain courses be taken in areas where the person has shown weakness. The Colorado Supreme Court adopts the law professor's recommendation and the individual is allowed to take the examination a fourth time if the prescribed courses are taken and passed. III R. 11–12. Since 1975 this procedure has been applied uniformly to all applicants attempting to take the bar examination more than three times, with the exception of two individuals who were allowed to use private tutors. III R. 14, 15.

Persons who have been denied an opportunity to take the examination a fourth time are given an opportunity to meet personally with Justice Groves, who explains the Colorado Supreme Court procedure on taking the examination more than three times. III R. 13, 30. Although Mr. Younger did request a meeting with Justice Groves after denial of his petition to take the February 1979 examination, the meeting was cancelled due to a time conflict and never rescheduled. III R. 14.

Evidence was also introduced concerning the basis for Rule 214. The affidavit of Justice Erickson states that the requirement for obtaining special permission and for showing good cause before taking the bar examination a fourth time is based on the Colorado Supreme Court's conclusion that repeated failure of the examination has proven an individual is not competent to practice law and that few pass on the fourth attempt, even with additional legal training. I R. 45. Justice Groves stated that legal competency is generally discovered in the first three examinations and that failure to pass the first three times is "a pretty good sign that the person is not competent to enter the profession or to be admitted to the bar." III R. 16.

Statistics regarding the pass rate for the Colorado bar examination were also introduced. Of the ten persons who took the Colorado bar examination for a fourth time between February 1975 and February 1979, only 20% passed. This compares with a pass rate of 46% for third time examinees, 61% for second time examinees, and an overall pass rate of 77%. IV R. Ex. D and E.

Mr. Younger testified that he is still employed as a law clerk with the Legal Aid Society, never being promoted to an attorney's position because of his failure to pass the Colorado bar examination. III R. 36. However, in 1978 the Denver Legal Aid Society adopted a policy requiring law clerks to pass the bar examination or face termination. III R. 35. Thus plaintiff's job is at risk. Although the record is somewhat unclear, Mr. Younger apparently is to be allowed to continue working as a law clerk until the final resolution of this litigation. III R. 46, 49.

The parties subsequently stipulated that the evidence submitted at the hearing on plaintiff's motion for a preliminary injunction, which we have summarized above, would constitute all the evidence in the case. The district court decided the merits of plaintiff's claim on this record.

II

*Jurisdiction*

■ Defendants first assert that this action merely seeks review of the allegedly unlawful denial of a particular applicant's attempt to become a member of the Colorado bar and hence the district court lacked jurisdiction to hear the matter, relying on our opinion in *Doe v. Pringle*, 550 F.2d 596 (10th Cir.), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227, *inter alia*.

We agree that the Supreme Court has placed limits on the jurisdiction of federal courts to review state supreme court actions involving bar admission, discipline and disbarment. In *Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342, the Court stated:

It is not for this Court, except within the narrow limits for review open to this Court, as recently canvased in *Konigsberg v. California*, 353 U.S. 252 [, 77 S.Ct. 722, 1 L.Ed.2d 810], and *Schware v. Board of Bar Examiners*, 353 U.S. 232 [, 77 S.Ct. 752, 1 L.Ed.2d 796], to sit in judgment on Louisiana disbarments, and we are not in any event sitting in review of the Louisiana judgment. . . . The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included.

We have held that the federal district courts may not exercise jurisdiction to review an adjudication by the state courts which is alleged to have unlawfully denied admission to a particular applicant for admission to the bar. *Doe v. Pringle, supra,* 550 F.2d 596, 597; *see also Gately v. Sutton,* 310 F.2d 107, 108 (10th Cir.).[2] However,

2. For similar holdings, *see e. g., Woodard v. Virginia Board of Bar Examiners*, 454 F.Supp. 4, 6 (E.D.Va.), *aff'd*, 598 F.2d 1345 (4th Cir.); *MacKay v. Nesbett*, 412 F.2d 846 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425; *Ginger v. Circuit Court for County of Wayne*, 372 F.2d 621, 625 (6th Cir.), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998; *Newsome v. Dominique*, 455 F.Supp. 1373, 1375 (E.D.Mo.); *see also Feldman v. State Board of Law Examiners*, 438 F.2d 699, 701 (8th Cir.).

our decision in *Doe* does recognize a distinction between a frustrated bar applicant's challenge to the denial of his particular petition and a constitutional attack on a state's general rules and regulations governing admission (550 F.2d at 599):

> [A] federal district court may exercise jurisdiction in relation to review of alleged federal constitutional due process or equal protection deprivations in the state's adoption and/or administration of general rules and regulations governing admission.

We feel that there is a sufficient basis for jurisdiction of Mr. Younger's claim under 28 U.S.C. §§ 1331 and 1343(3). By his constitutional claim he is challenging Colorado's adoption and enforcement of a rule which places a constriction on the number of times an otherwise qualified individual can take the Colorado bar examination. A review of the record supports this conclusion. One of the allegations in the complaint is that Rule 214 *on its face* and as applied to plaintiff violates the Fourteenth Amendment and one of the prayers for relief is that the rule be declared unconstitutional *on its face* and as applied. I R. 10–11. The district court clearly treated this action as an attack on the validity of the Rule, as indicated by comments made from the bench during arguments on defendants' motion to dismiss and also at the evidentiary hearing on plaintiff's motion for preliminary injunction. II R. 3, 5, 11; III R. 24. The court's Memorandum Opinion and Order states that the action is viewed as a challenge to the constitutionality of the Rule itself. 482 F.Supp. at 1246.

The district court properly concluded that this action is a constitutional challenge to Rule 214 which is within the court's subject matter jurisdiction. *See Potts v. Honorable Justices of the Supreme Court of Hawaii*, 332 F.Supp. 1392, 1395 (D.Haw.); *Lipman v. Van Zant*, 329 F.Supp. 391, 394–397 (N.D. Miss.); *Webster v. Wofford*, 321 F.Supp. 1259, 1260–1261 (N.D.Ga.); *Keenan v. Board of Law Examiners of the State of North Carolina*, 317 F.Supp. 1350, 1353–1356 (E.D.N.C.).

III

*The constitutionality of Rule 214*

The issue decided by the district court and before us on appeal is a narrow one: whether Rule 214 violates the Fourteenth Amendment insofar as it limits the number of times a person may take the written examination for admission to the bar in Colorado. The district court held unconstitutional only that aspect of the Rule making a final preclusion of the opportunity for re-examination as having no "rational connection with the compelling interest in requiring a demonstration of professional competence by successful completion of a written examination before admission to the Bar." 482 F.Supp. at 1247.

The court reasoned that since the examination is viewed as a valid test of professional competence, the number of times the examination is taken before achieving a passing score is irrelevant; that additional legal study, exposure to law-related work or even individual changes in maturity may affect one's ability, as the Colorado policy of routinely allowing a third examination recognizes; and that the final limitation is irrational and may also be considered a constitutionally infirm irrebuttable presumption. *Id.* at 1247.

We feel that the district court was correct in applying the rational basis test. In a case involving substantive due process the Supreme Court held that any qualification imposed by a state before admitting an individual to its bar must have a "rational connection" with the applicant's fitness or capacity to practice law. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796. Also under the traditional equal protection standard the classification challenged here—differentiating between persons who have failed the Colorado bar examination three times and those who have not—must bear some rational relationship to a legitimate state pur-

pose. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768; *McDonald v. Board of Election*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739.[3]

We have outlined generally the trial judge's reasoning but his main concern seems to be expressed as follows (482 F.Supp. at 1247):

> There is, indeed, ample support for the defendants' view that there is little likelihood that an applicant will succeed on re-examination after three or more failures. But, what is the legitimacy of the court's concern about the probabilities of passing? When the examination is a valid test of professional competence the number of times the test was taken before a passing score was achieved is irrelevant. Obviously, Colorado does not consider the lawyer who passed on the second or third examination to be less qualified than those who were successful the first time.

We must disagree with this conclusion of the court which is relied on by plaintiff Younger. II R. 6. Passing the examination is agreed by the parties to be a valid measure of one's legal competency. II R. 6. Justice Groves admitted that while the examination is not a perfect measure of an individual's ability or competency to practice law, "it's the most accurate, as far as we know . . ." and that an individual passing the examination is "[p]rima facie" competent to practice law in Colorado. III R. 26–27.

However, this does not mean that success on the examination is an absolute determinant of capacity and that other concerns of possible fundamental deficiencies in a repeating examinee may not be taken into account by the State. (See Opening Brief of Appellants at 19). Despite final success, earlier failures might well be of concern to the State. Both Justice Groves and Justice

Erickson considered three failures of the Colorado bar examination to be, indicative of an individual's lack of competence and ability to practice law. Statistics regarding the low pass rate for persons taking a fourth examination tend to support this conclusion. Thus justifiable doubts could be felt about those taking four or more examinations, despite ultimate success. And we do not feel the fact that permission in some instances has been given for more than three examinations disproves any validity of concerns about allowing more than three examinations.

We must not hold the State's Rule invalid unless it has no "rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners, supra*, 353 U.S. at 239, 77 S.Ct. at 756. Moreover, under equal protection standards the classifications drawn will be set aside only if based on reasons totally unrelated to a legitimate state end, and if no grounds can be conceived to justify them. *McDonald v. Board of Election, supra*, 394 U.S. at 809, 89 S.Ct. at 1408. There may be other procedures the State could follow to further its legitimate interest in assuring a competent bar. Justice Groves admitted that determining the competency of attorneys is an imperfect process. III R. 15. However, we must not interfere with the State's policy if it rationally furthers some legitimate, articulated State purpose. *Cf. McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282. (State determinations in the "practical and troublesome" area of optimal time for parole eligibility found to have some rational basis to sustain them).

In view of the evidence viewed as a whole, including the data not rejected by the trial judge for any lack of credibility, we must hold that the Rule as applied in the plaintiff's case is not invalid under the

---

**3.** We conclude a more rigorous "strict scrutiny" or "compelling interest" test is inapplicable here. We do not feel that entry into law practice is a "fundamental right" or that the challenged classification of bar applicants is based on "suspect" criteria. *See Lombardi v. Tauro*,

470 F.2d 798, 800 (1st Cir.), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145; *Goldsmith v. Pringle*, 399 F.Supp. 620, 623 (D.Colo.); *Huffman v. Montana Supreme Court*, 372 F.Supp. 1175, 1177–1178 (D.Mont.), *aff'd*, 419 U.S. 955, 95 S.Ct. 216, 42 L.Ed.2d 172.

Due Process and Equal Protection Clauses. It is a rational policy adopted in the exercise of the State's recognized authority to assure a competent bar. *See Rossiter v. Law Committee of the State Board of Law Examiners,* No. C–4767 (D.Colo.) (unpublished).

■ There remains the question whether the Rule invalidly enforces a conclusive and irrebuttable presumption of incompetence, contrary to principles recognized in *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52; *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63; and *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551; *see also Coleman v. Darden,* 595 F.2d 533, 537 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184. We are not persuaded that such an application of a conclusive presumption is involved here, with a fact question being identified and then decided by a conclusive presumption: there is instead a general classification policy and numerous factors may undergird the line drawn by the Rule. *See Mogle v. Sevier County School District,* 540 F.2d 478, 485 (10th Cir.), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572. To apply the conclusive presumption doctrine so as to invalidate the overall judgment expressed in the Rule seems an unwarranted extension of the holdings in *LaFleur, Vlandis* and *Stanley. See Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522; *Mogle v. Sevier County School District, supra,* 540 F.2d at 485.

In sum, we agree that the district court had jurisdiction to hear this matter. However, we must disagree with the court's ruling that Rule 214 violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment and applied an unlawful conclusive presumption. We conclude that the Rule is valid as applied and accordingly the judgment is

REVERSED.