James REYNOLDS, Randy Dix, Jerome Cate, Donald A. Douglas, Plaintiffs,

v.

STATE BAR OF MONTANA, et al., Defendants.

No. CV–81–25–GF.

United States District Court, D. Montana, Great Falls Division.

Sept. 25, 1981.

James H. Goetz, Bozeman, Mont., for plaintiffs.

Ray F. Koby, Swanberg, Koby, Swanberg & Matteucci, Great Falls, Mont., for defendants.

## MEMORANDUM

HATFIELD, District Judge.

Plaintiffs commenced this action seeking injunctive and declaratory relief for claimed deprivation of civil rights in violation of 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1343(3).[1]

Plaintiffs are lawyers and members of the integrated State Bar of Montana. Defendants are the officers of the State Bar, the members of the Board of Trustees of the State Bar, and the legislative lobbyist employed by the State Bar. The Supreme Court of Montana integrated the bar in 1974, *Application of the President of the Montana Bar Ass'n.*, 163 Mont. 523, 518 P.2d 32 (1974), and adopted governing rules for the State Bar in 1975, *In re Unified Bar of Montana*, 165 Mont. 1, 530 P.2d 765 (1975).[2] All lawyers licensed to practice

1. 28 U.S.C. § 1343(3) provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

2. The inherent power of the Montana Supreme Court to unify the bar is established by the following cases: *In re Petition for the Unification of the Montana Bar*, 156 Mont. 515, 485 P.2d 954 (1971); *Application of the Montana*

law in Montana are required to be members of the State Bar and to pay an annual license fee. The amount of the fee ranges in price depending on the number of years in practice.

The complaint alleges that the State Bar is involved in political activities unrelated to its duties. The charge is that: "[T]he State Bar engages in a number and variety of activities and programs which are economic, political, professional, and scientific in nature of which plaintiffs do not approve including lobbying and filing actions on political issues." The complaint further alleges that "[s]uch activities by the State Bar are for the support of the expression of ideological and political views unrelated to the proper duties of the State Bar" and that the plaintiffs are "coerced into supporting said activities and ideas against their will by the threat of loss of practice of their profession." The activities complained of include, but are not limited to, (1) lobbying efforts by the State Bar to oppose legislation pending before the Montana State Legislature, and (2) filing an original action in the Supreme Court of Montana to declare Initiative 85 unconstitutional with regard to the supervision and licensing of attorneys in Montana.[3]

The complaint seeks injunctive relief restraining the State Bar from lobbying and filing actions on political issues.[4] The complaint also seeks a judgment declaring that the activities complained of violate the First Amendment of the United States Constitution.

Presently before the court is the plaintiffs' motion for summary judgment, a cross motion for summary judgment filed by the State Bar, and the plaintiffs' motion to compel answers to interrogatories. The latter motion, filed subsequent to the plaintiffs' motion for summary judgment, requests the court to order the State Bar to provide information regarding its lobbying activities during the 1979 session of the Montana State Legislature. Plaintiffs urge the court to defer its decision on the motions for summary judgment pending receipt of the requested information from the State Bar.

In their motion for summary judgment, the plaintiffs contend that the use of compulsory membership dues to finance the political activities of the State Bar violates the First Amendment. In support of their contention, the plaintiffs rely upon *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). In *Abood*, the United States Supreme Court ruled that a union could use compulsory membership fees only for the traditional union activities of collective bargaining, contract administration, and grievance-adjustment purposes; the union was prohibited from spending any part of the required

---

*Bar Ass'n.*, 142 Mont. 351, 385 P.2d 99 (1963); *Application of the Montana Bar Ass'n.*, 140 Mont. 101, 368 P.2d 158 (1962); *In re Unification of Bar of this Court*, 119 Mont. 494, 175 P.2d 773 (1947); *In re Unification of the Montana Bar Ass'n.*, 107 Mont. 559, 87 P.2d 172 (1939).

Previous applications for unification were denied by the Montana Supreme Court for the following reasons: (1) a divided bar and a divided court on the issue of unification (*In re Petition for the Unification of the Montana Bar* (1972)); (2) members of the bar did not desire unification (*Application of the Montana Bar Ass'n.* (1963)); (3) failure to show a need for unification (*In re Unification of the Montana Bar Ass'n.* (1939)); (*In re Unification of the Bar of this Court* (1947)).

3. Initiative 85 was approved by the people of Montana at the general election held November 4, 1980. By initiative, the people proposed a law to require public disclosure of money spent to influence action of a public official. The law requires all individuals or businesses who employ lobbyists and spend more than $1,000 a year to promote or oppose official action of a public official to give a complete accounting of all money spent. The proposal does not apply to individual citizens lobbying on their own behalf. Elected officials are required to publicly disclose their business interests. The initiative provides for criminal and civil penalties for violations of its provisions. The text of Initiative 85 is at 1981 Mont.Laws p. 1643.

4. Plaintiffs' application for preliminary injunction was denied by order of this court dated April 10, 1981, on the grounds that the plaintiffs had not made a showing sufficient to justify issuing a preliminary injunction which would act as a prior restraint upon defendants' First Amendment rights.

fee on political candidates or to express political views unrelated to its duties as exclusive bargaining representative. *Abood, supra,* 431 U.S. at 232–34, 97 S.Ct. at 1798–99. Plaintiffs maintain that the *Abood* rationale permits the State Bar to undertake activities such as those allowed in *Abood, i. e.,* collective bargaining, grievance adjustment, and contract administration.

The State Bar, in its cross motion for summary judgment, asserts that the activities complained of are within the purposes and powers of the State Bar and are constitutionally appropriate. In the alternative, the State Bar urges this court to provide the Montana Supreme Court with an opportunity to rule upon the plaintiffs' contentions by abstention in the manner directed by the Tenth Circuit Court of Appeals in *Arrow v. Dow,* 636 F.2d 287 (10th Cir. 1980).

The court agrees that the latter alternative proposed by the State Bar is appropriate in this situation. For reasons hereinafter specified, this court chooses to abstain under the doctrine enunciated by the United States Supreme Court in *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Canton v. Spokane School District # 81,* 498 F.2d 840 (9th Cir. 1974).

DISCUSSION

A. *The Doctrine of Abstention*

Abstention is an extraordinary and narrow exception to the duty of a court to adjudicate a controversy properly before it. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Abdication of the obligation by a

court to exercise its jurisdiction is appropriate when special circumstances are present. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979), *citing Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973), and *Lake Carrier's Ass'n. v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1756, 32 L.Ed.2d 257 (1972). *See also County of Allegheny v. Frank Mashuda Co., supra* 360 U.S. at 188, 79 S.Ct. at 1062. The most prevalent form of "special circumstances" which makes abstention appropriate is a situation where an issue of state law is susceptible of an interpretation by the state courts which would avoid or modify the decision of a federal constitutional question. This is usually referred to as the *Pullman* doctrine, from the case of *Railroad Comm'n of Texas v. Pullman Co., supra. Pullman* abstention has been upheld and frequently invoked since its inception in 1941.[5] *See, e. g., Babbitt v. United Farm Workers National Union, supra; Kusper v. Pontikes, supra; Lake Carrier's Ass'n. v. MacMullan, supra; Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Harrison v. National Ass'n for the Advancement of Colored People,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

B. *The Doctrine of Abstention in the Ninth Circuit*

■ The Ninth Circuit Court of Appeals has adopted the *Pullman* doctrine of abstention. In *Canton v. Spokane School District # 81,* 498 F.2d 840 (9th Cir. 1974), the

---

**5.** Abstention is a doctrine that is variously recognized. For example, a court may choose to abstain from deciding a controversy properly before it to avoid needless conflict with the administration by a state of its own affairs. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

The various types of abstention are enunciated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), where the United States Supreme Court summarized its decisions on abstention and noted three categories where abstention is proper:

(1) Cases presenting a "constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law."

(2) Cases presenting difficult state policy problems "whose importance transcends the result in the case then at bar."

(3) Cases restraining state criminal proceedings which do not involve bad faith, harassment, or a patently invalid state statute."

*Id.* at 814–16, 96 S.Ct. at 1244–45.

Ninth Circuit, relying upon *County of Allegheny v. Frank Mashuda, supra,* and *Railroad Comm'n of Texas v. Pullman, supra,* set forth the basic elements for proper abstention:

(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.

(2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

(3) The possibly determinative issue of state law is doubtful.

*Id.* at 845. *Canton* has been cited as authority in numerous abstention cases and is undoubtedly the law of this circuit on abstention. *See, e. g., Pue v. Sillas,* 632 F.2d 74 (9th Cir. 1980); *International Brotherhood of Electrical Workers v. Public Service Comm'n.,* 614 F.2d 206 (9th Cir. 1980); *Isthmus Landowners Ass'n v. State of California,* 601 F.2d 1087 (9th Cir. 1979); *Santa Fe Land Improvement Co. v. City of Chula Vista,* 596 F.2d 838 (9th Cir. 1979); *Sederquist v. City of Tiburon,* 590 F.2d 278 (9th Cir. 1978); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092 (9th Cir. 1976). Applying the *Canton* principles to the case at bar, this court finds that special circumstances warrant abstention.[6]

### 1. *The Complaint Touches a Sensitive Area of Social Policy*

█ It is clear that the complaint filed by the plaintiffs "touches a sensitive area of social policy from which this court ought not to enter." The power to regulate attorneys and the practice of law in Montana is vested exclusively in the Montana Supreme Court. Mont.Const.Art. VII, § 2, cl. 3

states: "It [Montana Supreme Court] may make rules governing appellate procedure for all other courts, admission to the bar, *and the conduct of its members.*" [emphasis added]. Thus, it is within the province of the Montana Supreme Court, and not this court, to oversee the conduct and activities of the State Bar. This court does not wish to interfere with the constitutional power of the Montana Supreme Court to discern the propriety or impropriety of the activities of the State Bar. This is a sensitive and local matter from which this court feels obligated to abstain.

### 2. *Constitutional Adjudication May Be Avoided*

The second *Canton* requirement, that constitutional adjudication "plainly can be avoided if a definitive ruling on the state issue would terminate the controversy", has also been fulfilled. The Ninth Circuit has interpreted this element to mean that the construction of the state issue by the state courts might obviate, or at least delimit, decision of the federal constitutional question. *Canton v. Spokane School District # 81, supra,* 498 F.2d at 845, *citing Baggett v. Bullitt,* 377 U.S. 360, 375–78, 84 S.Ct. 1316, 1324–26, 12 L.Ed.2d 377 (1964).

The contentions advanced by the plaintiffs embody issues whose disposition by the Montana Supreme Court may avoid the need to decide the constitutional questions. Plaintiffs claim that they are being forced to financially support activities which are not within the proper function of the State Bar. A definitive ruling by the Montana Supreme Court on the nature of the activities which compulsory membership dues may be used to support, so that the State Bar will be acting within the scope of its designated function as outlined in Articles

---

**6.** This court is mindful that the Ninth Circuit deems cases involving questions of civil rights as the least likely candidates for abstention. *See Tovar v. Billmeyer,* 609 F.2d 1291 (9th Cir. 1980); *Stephens v. Tielsch,* 502 F.2d 1360 (9th Cir. 1974); *Canton v. Spokane School District # 81, supra.* However, the court is of the opinion that special circumstances exist in this case which outweigh the "unflagging obligation" of the court to exercise its jurisdiction in § 1983 actions. *See Tovar v. Billmeyer, supra,* 609 F.2d at 1293. These "special circumstances" will be discussed in relation to the fulfill-

III and IV [7] of its constitution, might delimit a ruling on the constitutional issues. A similar result may be reached if the supreme court were to decide whether the specific acts complained of by the plaintiffs are within the proper functions of the State Bar and are proper uses of the compulsory membership fees. In sum, the contentions presented by the plaintiffs to this court seem particularly suited for disposition by the Montana Supreme Court, thus possibly avoiding the need to render a decision on the federal constitutional questions.

### 3. *Determinative Issue of State Law is Doubtful*

The third *Canton* requirement has been fulfilled. Although the Montana Supreme Court has ruled on the merits of the Initiative 85 lawsuit filed by the State Bar,[8] this court is not aware of any decision by the Montana Supreme Court interpreting the constitution of the State Bar with regard to the proper functions of the State Bar, or with regard to the proper functions of the State Bar, or with regard to the nature of the activities which the compulsory membership fees paid to the State Bar may be used to support. These are doubtful issues of state law which are within the inherent power of the Montana Supreme Court to decide.

### C. *Other Authority For Abstention*

This court is also persuaded that abstention is proper by the recent decision of the Tenth Circuit in *Arrow v. Dow, supra.* In *Dow*, lawyers and members of the integrated State Bar of New Mexico brought an action against the State Bar President and members of the Board of Bar Commissioners. The complaint alleged that the Board of Bar Commissioners hired a legislative lobbyist who influenced members of the state legislature on public policy matters. The complaint further stated that these actions were of an "economic and political nature of which plaintiffs do not approve, in which they have no voice, and which are not legitimate functions of an integrated bar." The plaintiffs sought injunctive, declaratory and monetary relief for claimed deprivation of civil rights in violation of 42 U.S.C. § 1983. The district court held that it should abstain and dismissed the complaint.

On appeal the Tenth Circuit Court of Appeals ruled that abstention was proper under the circumstances:

Implicit in the plaintiffs' position is the claim that the Board has exceeded the authority granted to it by the New Mexico Supreme Court. Federal courts should not interfere with a state policy which "rationally furthers some legitimate, ar-

---

ment of the *Canton* requirements for abstention.

**7.** The pertinent provisions of the Constitution of the State Bar of Montana are as follows:

ARTICLE III
PURPOSES
The purposes of the State Bar of Montana are to aid the courts in maintaining and improving the administration of justice; to foster and maintain and require on the part of those engaged in the practice of law high standards of integrity, learning, competence, public service, and conduct; to safeguard proper professional interests of members of the bar; to encourage the formation, maintenance, and activities of local bar associations; to provide a forum for the discussion and effective action concerning subjects pertaining to the practice of law, the science of jurisprudence, and law reform, and relations of the bar to the public; to provide for the continuing legal education of members of the bar; and to insure that the

responsibilities of the legal profession to the public are more effectively discharged.
ARTICLE IV
POWERS
The State Bar of Montana may sue and be sued, enter into contracts and acquire, hold, encumber and dispose of real and personal property.

**8.** *See State Bar of Montana v. Krivec*, Mont., 632 P.2d 707, 38 St.Rptr. 1322 (1981). In *Krivec*, the Montana Supreme Court upheld the constitutionality of Initiative 85:

So construed, we do not find the Initiative as amended by this Court in *Montana Automobile Association* [*v. Greely*, 632 P.2d 300], *supra*, to be so vague as to be unconstitutionally uncertain, nor does it intrude on the powers of this Court to regulate the conduct of attorneys. As so construed, the Act applies equally to attorneys and non-attorneys acting in the field of nonlegislative lobbying.
*Id.* at 712, 38 St.Rptr. at 1327.

ticulated state purpose." *Younger v. Colorado State Board of Law Examiners,* 10 Cir., 625 F.2d 372, 377. Our attention is called to no action of the New Mexico Supreme Court construing or applying its Rule 1(a). That court should determine the validity of the Rule and of the retention of the lobbyist paid by Board funds derived from members' fees.

*Id.* at 290. The Tenth Circuit did rule, however, that dismissal of the action was improper. The case was remanded to the district court with directions to vacate the dismissal and to stay the proceedings until the state court ruled on the issues presented.

■ The facts in *Arrow v. Dow, supra,* are strikingly similar to those in the case at bar. As such, this court is inclined to follow the rationale of *Arrow v. Dow, i. e.,* that the Montana Supreme Court should determine whether the compulsory membership dues are being properly spent, and whether the activities complained of are within the proper functions of the State Bar.

CONCLUSION

■ Since the requirements for abstention set forth in *Canton v. Spokane School District # 81, supra,* have been fulfilled, *Pullman* abstention is warranted in this case. However, *Pullman* abstention forbids dismissal of the action. Jurisdiction is to be retained until the authoritative ruling from the Montana Supreme Court is obtained.

Accordingly, this court will abstain from ruling on the motions for summary judgment and the motion to compel answers to interrogatories. Plaintiffs are encouraged to file an original declaratory judgment action with the Montana Supreme Court pursuant to Mont.Const.Art. VII, § 2, Cl. 3, and Title 27, Chapter 8 of the Montana Code Annotated. Jurisdiction will be retained by this court pending resolution of the plaintiffs' contentions by the Montana Supreme Court. Once the state court ruling has been obtained, the plaintiffs have the right to return to this court for a determination of any remaining federal constitution questions. *England v. Louisiana State Board of*

*Medical Examiners,* 375 U.S. 411, 415–17, 84 S.Ct. 461, 464–465, 11 L.Ed.2d 440 (1964).

An appropriate order shall issue.